Good morning, your honors. May it please the court. I'm Brian McLeish on behalf of the respondent warden. I'd like to begin by pinning down the two theories of ineffective assistance of appellate counsel that have been presented to this court. Before you do that, this case is very troubling and very unusual because whatever happened in the state courts happened. And I am not actually right now thinking about that. But what happened at the district court level, it seems to me, was badly distorted by the position the state of Illinois took. So in the district court, under the ineffective assistance of direct appeal counsel, claim B, the state submits something saying, because the state courts did not adjudicate the merits of petitioner's claim, et cetera, EDPA does not apply, and this court must dispose of the matter as law and justice require. So now, of course, you're saying, oops, we made a mistake. We didn't really mean to say that. But that seems to me terribly prejudicial to Mr. Winfield in that if he had known all along in the district court that this was an EDPA case, it means that you develop the case differently, you litigate the case differently. We all, believe me, by 1996 was a long time ago, and we're very familiar with EDPA. So it seems to me that for the state just to get off scot-free saying, oh, in any case, we're going to change our mind whenever we want to, is a very inappropriate way to handle litigation. So I don't know why there shouldn't be a do-over in the district court without prejudice to anything that the state courts did. Assuming no waiver, despite having expressly waived, at minimum, it would have to be remanded. I respect that position, presuming that the 2254D matters. And so first, I'll respond by saying that I don't think there is any prejudice, and here's the reason. But if it doesn't matter, then you continue to waive, and we'll just go ahead and decide it on the same standard as the district judge. We will present as an alternative argument that there is no constitutional violation here. However, we will not re-waive the standard of review. You've waived enough, as it is. Presuming that this is something that can be waived, then we concede that it was waived. However, Are you conceding that? No, if it can be waived. If it can be waived, we'll say that they waived it. We argue that this is something that cannot be waived. You cannot waive the standard of review generally. That is for the court to decide, not the parties. And particularly in 2254D, where the statute says the court shall not grant review. And that may be right, but my problem is really more of a litigation management problem. When the state comes in and it takes an issue off the table, there are a lot of legal issues that people take off the table. So sometimes, for example, in civil litigation, there might be a dispute about whether the law of Illinois or the law of Wisconsin applies to a matter. That's an issue for the court. It's a legal issue. But the parties can say, well, we're not going to contest. The law of Wisconsin, we all agree, applies. And so no one litigates. Maybe the law of Illinois is different. And maybe they would have put different evidence in, had they known that this issue was on the table. So just calling it a legal issue doesn't get me as far as I need to go to feel comfortable that this proceeding was a fair proceeding for Mr. Winfield. Correct. And as noted, we're not relying heavily on this. However, I would like to say one more thing that, if anything, Petitioner got extra process in the district court, because we were proceeding under the assumption that it was to no good. Yeah, and the district court granted him relief. That's the thing. The district court, there's a lot that's bizarre about this case. How the same man can be standing there and completely innocent of killing person A and guilty of attempting to kill person B is more than a little weird, especially since there's no witness to say that that's what happened. And we've got all of the contested circumstances of the so-called confession, which is a pretty weak confession anyway. Looking at the transcript of this thing, it's very troublesome. So I'm not sure you want to get to plenary review. But if you do, you're welcome to argue it. Yes, and first I'll address the point about the acquittal on murder and the conviction on attempted murder. And the explanation there, I agree that it's weird. And the explanation there is very simple. There was dispute as to whether there were one or two shooters. And at the time, after we exclude the eyewitness, the victim's eyewitness testimony and the other eyewitness testimony, the only evidence of two shooters was petitioner's confession. And the trial court found that that was enough to create reasonable doubt as to whether there was. Well, one of the so-called eyewitnesses also saw two persons. Well, but that witness was discredited. And right, correct. So in any event, there was doubt about whether the petitioner was the only shooter or whether there was another shooter. And that is precisely why the trial court acquitted petitioner of murder, because the trial court first couldn't find whether petitioner's bullet or the potential other shooter's bullet was the one that. How does the trial court resolve that? Are there two shooters under the trial court's view, or is there one shooter? There is reasonable doubt about whether there is. Well, that's ridiculous. I mean, if there are two shooters, then you have the problem that maybe it was somebody else. If there's one shooter, how can he be shooting one person and not killing the other person? So that's a little unsatisfactory. And the trial court resolved that by holding it against the state. The trial court did exactly what it should in a criminal proceeding by holding it against the state. In the murder, it presumed, even though I think the trial court was skeptical of the two shooters, it presumed that there might have been two shooters and therefore said, listen, state, you haven't proven that he was the one that fired the fatal bullet. You haven't proven accountability, which, again, is a weird thing given the circumstances. But that is what the trial court said. And we're not asking this court to reverse that and find him guilty of murder, which I think is the more sensible option. So it held it against the state. And then when we look at attempted murder, what we have is somebody got out of a black four-door SUV and shot at these two gentlemen. That's what the independent eyewitness says. That's precisely what Petitioner describes in his confession. And I agree that the confession was bare bones. I mean, I'm looking at it right here. It doesn't take many pages. Correct. But Petitioner testified. And he didn't testify that, you know, I was feeling pressured and therefore I made this bare bones confession to get out of this. What he testified was all over the place. But what he testified was, they made this pull cloth without my input, forced me to sign it without my view. And it was all read to him by the assistant state's attorney. I mean, it's not the craziest thing that I've ever heard. No, according to his testimony, it was not even read to him. And they physically put a hand over the confession. Well, that's happened too, unfortunately. There are all sorts of bad stories. And if the police were going to do that, you would think they would make up a better confession, frankly. And they wouldn't put these exculpatory details, including the fact that one of the victims had shot at Petitioner a couple weeks earlier. If you look at this confession, what you see is. Oh, this dice game. You know, but it's not really exculpatory as much as it is providing motive. Perhaps, but the second shooter. But well, there's some fear of his life. So I mean, in actual law, no, it's not exculpatory. But from the perspective of someone who's been accused of this crime, maybe he thinks that it is exculpatory that he's been shot at recently. I can't believe that. But that's his testimony, right? So his testimony isn't that I was pressured into giving this confession, that this confession, you know, it's that they made it up. And first of all, there's no evidence of that. And there's no reason. This was like two weeks later, right? Three weeks later? Correct. And by that point, they had already interviewed the eyewitnesses? Correct. The so-called eyewitnesses? Yes. The corroborating information is fairly limited. Corroborating specific to the confession. And all of it could have easily come from those interviews and the examination of the scene. That is correct. However, so yes, but that's neither here nor there. I mean, well, it is somewhere. If it's neither here nor there, then it's in the third place. Because it shows that he doesn't confess to anything that he only can furnish. All he's done is repeat everything they already know. Well, it does not show that. It does not show that, Your Honor. And what is in there that the police wouldn't have been able to put together themselves from their eyewitness account? So neither of the eyewitnesses testified about the shooting two weeks prior. That was provided solely by defendants. And the driver named Snoop, they wouldn't have known about that? Well, is that because there was originally, Garrett originally denied? There was an altercation? At some point, didn't he acknowledge that there had been a problem with the dice game? He acknowledged the dice game. He didn't acknowledge the shooting in testimony. And additionally, if petitioner's testimony, so what we have to look at is whether the reviewing court, there was any reasonable probability of the reviewing court to discredit this, to find that no reasonable jurist could believe this confession. And there is no such basis for that. In Illinois law, under the Jackson standard, which Illinois follows, or any other standard of sufficiency review, we ask this court reverts in remand. Thank you, Mr. McLeish. Mr. Theis. May it please the court, Bill Theis for Mr. Winfield. Thank you. As the court pointed out, the state started off by agreeing to a factual proposition that the state courts had not dealt with this issue. Is that a factual proposition? I mean, I know you argued that it's a question of fact, but it sounded to me, just even reading your briefs, it's much more a question of law. It's like construing a contract is a question of law. You construe the state court record. You make a decision about what was actually litigated, what wasn't. These are all legal questions. That may not matter in the end, but I think we need to be clear what we're dealing with. I would submit, Your Honor, that in light of the Supreme Court case that the state relies on, the name of which escapes me, about what you do with Harrington versus Richter problems, when they say there's a Johnson. When the Supreme Court in Johnson says that there's a presumption that the state courts litigated the issue, that certainly sounds like there's some room for factual development. Did the state courts litigate it, or didn't they? Well, there's some room for development. I guess I'm still quibbling about the word factual, because one could certainly look at the state court record and see if there was some procedural bar to addressing an issue, or to see if just reading the opinion, you just don't see a particular issue acknowledged, or they actually say something. The court suggests that it's going to be hard to rebut this presumption, but that it's rebuttable. I agree with you that far, but I'm not sure that it's a factual point. Well, let me go back a moment. I mean, again, it may not matter, because the thing that, as I told your opponent, the thing that concerns me about this is, A, I proceed from the proposition that there are real teeth in the standard of review for 2254D. I don't know who could doubt that, if you look at Harrington, if you look at whatever case you want to look at. And so it makes a big difference if this is a 2254D case, or if it's not, if it's in this little group that Johnson opens up. So if the state comes in and tells you, yes, we know there's this legal issue here, but we believe that this is not a 2254D situation, it wasn't raised, I would have imagined that it would affect the way the case is presented, the kinds of arguments you're going to make, what you're looking for in the record, and all the rest of it. And that's what bothers me about this case. It certainly would affect, and if this court is willing to let the state reverse positions, we would fully expect to get a chance to litigate the case under what was subsequently determined to be the standard of review. Yeah, the correct standard. I mean, actually, I think probably the state was mistaken at first. It looks to me, particularly under Johnson, under the Supreme Court's law about what do you do with issues that aren't discussed, the court is pushing very hard in the direction of saying, give the state court the benefit of the doubt. So maybe this is a 2254D case, and you would need to litigate it that way. Could I push you a little bit on that point? Because you're suggesting there's a possible rebuttable presumption under Johnson v. that might get you there. The only reason that you were able to preserve the case was the benefit of a presumption, because in the collateral attack at the state court level, the argument that was made was sufficiency of the evidence, but never raised expressly, never raised the corpus delecti argument that you now want to make, understandably. And you were given the benefit of the Illinois presumption that by raising sufficiency of the evidence, the corpus delecti argument came along with it. So I don't know as a matter of law there's anything to rebut. You've got the sufficiency of the evidence argument, including corpus delecti, by benefit of that presumption. Isn't the reverse true, that by virtue of State v. Williams, the presumption is that argument having been made, it was addressed? Well, I would urge your honors to take a closer look at the briefing in the state court post-conviction proceedings. Because the brief from Mr. Winfield on the post-conviction appeal said there was ineffective assistance in the direct appeal because sufficiency of the evidence was not raised. But it also made the claim, in conjunction with the claim that the lawyer didn't go about getting the alibi witnesses, that that error followed through to the failure to do something on the direct appeal about the alibi witnesses. So those two prongs of ineffective assistance on direct appeal were set forth in Winfield's post-conviction review brief. The state. I'm not sure that changes. The fact that all that was presented to the court, doesn't that strongly support the notion that in rejecting it, the state court rejected exactly that argument? Well, let me finish up. What happened is that in the post-conviction review, that the state did not even answer the sufficiency of the evidence issue. And then when the state court enters its Rule 23 order, it focuses on trial counsel's deficient performance. And when it focuses on the direct appeal, it doesn't talk about sufficiency. It talks about the failure to follow up on finding the alibi witnesses as part of the direct appeal. So I think you could, consistent with Johnson versus Williams, say, here was a case where the state court was presented with the argument. So there's no fair presentment issue, you're going to say. There was a fair presentment, but there wasn't a fair resolution. And that would be, I think, the sort of situation that Johnson would envision. Well, but if presented and not particularly commented on, why would we conclude that it wasn't resolved in the state's favor? Because of the fact that the state did not even answer it. So are we to presume that the state court ruled on an issue that was presented by the defendant, but yet the government made no answer to it at all? Isn't it equally possible that it got lost in the mix? I can't preclude that. And the Illinois Appellate Court handles hundreds, if not thousands, of these appeals every year. And I'm not trying to fault them or cast aspersions on them. But it would be real easy to miss that. The fact that they didn't talk about it doesn't mean they thought about it and rejected it because it was so insignificant. They didn't resolve it because it ended up being significant. They just made an assessment. But we can say it's reasonable or unreasonable. But if you raise this alibi issue, which speaks directly to sufficiency, right? Because the argument is if it's insufficient because there is other evidence to indicate a contrary result, of course it gets back maybe to what standard we're going to use here. And so I want to know, I mean, I guess I don't want to put words in your mouth. If we were to decide that, as you said, the Illinois Appellate Court, he briefs sufficiency, one part he briefs alibi, and another part they talk about alibi, they don't talk about sufficiency, and hence not corpus delecti and all of that. If we thought that this is really the equivalent of just a final sentence in the Illinois Court's opinion, we've considered all the other arguments and find no merit in them, period. I guess we would all agree that they've decided the sufficiency evidence if they put that sentence in there. So if we infer that sentence is there, then that's not the end of the case. It just means that the task on habeas corpus is to decide whether that is an unreasonable application of clearly established law, et cetera, et cetera. I do want to make sure to make one point. I filed a 28J letter yesterday. I don't know if the court had a chance to see it. And I was able to. Oh, is this tilted? No, this isn't. There were two 28J letters, and one was filed yesterday and one was filed a couple weeks ago. And the one that was filed yesterday, I drew the court's attention to several cases. But I think right now, most importantly, Watkins versus Malloy, where this court held 20 years ago, but the court has never abandoned this precedent, that the court held that the state can waive reliance on AEDPA. Now, the Attorney General's office in this case has given you precedents from other circuits saying you can't waive the standard of review. And we've said, well, we're not really talking about waiving the standard of review. It's a waiver of factual issue. We'll take a look at it. But this court has already held that the state can waive. Well, that was a decision when the ink wasn't dry. I'm sorry? That was a decision of this court when the ink wasn't dry on AEDPA. Well, it was post-AEDPA. No, I recognize it. And I saw that in the letter. And I understood we have to deal with it. I mean, it would be unprecedented in this circuit for the state to say, oh, we made a mistake. We want to take it back. Unless we're confronted with that this is jurisdictional and can't be waived. I would maintain it's not jurisdictional. No, I understand. And I understand that you understand. All right, thank you very much, Mr. Tice. Anything further, Mr. McLeish? Yes, Your Honor. Thank you. A few quick points. So first, in response to the 28J letter, I've done some 11th hour research. And I would urge the court to consider Worth v. Tyler, 276, F3d, 249, where this court held that the court, not the parties, this court held that the court, not the parties, must determine the standard of review. And therefore, it cannot be waived. I'd like to quickly address Judge Flom's point that on post-conviction appellate review, the court did a harmless error analysis. And in fact, addressed the strength of the state's evidence in this case and found that any potential alibi witnesses wouldn't have overcome that. And so we do have a state court decision on the sufficiency of the evidence. You would never, if the shoe were on the other foot, be arguing to us that a discussion of alibi witnesses was enough to preserve the point about corpus delicti. No, correct. But correct, I would not. You would not. No, correct. However, they did consider the strength of the state's evidence. And petitioner and the district court, they're not relying on federal law.  have raised these idiosyncratic state law claims about sufficiency of the evidence. Petitioners almost disavowed the Jackson standard in Illinois. And we know what the Illinois courts would have done because they did it when comparing the strength of the evidence. Thank you, Your Honors. Thank you very much. Thanks to both counsel. We'll take the case under advisement.